UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOS KYRTSOS and
MARGARET KYRTSOS, individually
and on behalf of their minor children,
S.K., G.K., A.K. and N.K., and
ANGELA KYRTSOS,

       Plaintiffs,

v.                                                        Case No. 10-cv-12295
                                                           Paul D. Borman
                                                           United States District Judge

LATONYA CASH-CALHOUN,
DANIELLE DYKNES, OFFICER
NICHOLAS SMISCIK, OFFICER
PAUL HART, OFFICER DAVID
ADAMS, all jointly and severally and
in their individual capacities, and
CITY OF SOUTHFIELD, a
municipality, jointly and severally,

       Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

This is a civil rights case. The Plaintiffs are Christos Kyrtsos and Margaret Kyrtsos, along with their minor children, S.K., G.K., A.K., N.K., and Angela Kyrtsos[1]. The Defendants are Latonya Cash-Calhoun, Danielle Dykens, Officer Nicholas Smiscik, Officer Paul Hart, Officer David Adams, and the City of Southfield.

Plaintiffs claim that Defendants violated their rights under the federal constitution when

---

[1] Angela Kyrtsos was a minor at the time of the incident at issue but is now an adult.

1

Defendants entered their home and seized their minor children. Specifically, Plaintiffs' Amended Complaint claims:

> I. 42 U.S.C. § 1983 Violations of 4th and 14th Amendments
> II. Gross Negligence
> III. Civil Conspiracy

(Am. Compl.) (Dkt. No. 9). On October 8, 2010, Defendant Officers Smiscik, Hart and Adams (collectively, the "Defendant Officers"), with the City of Southfield, filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 29). Plaintiffs responded on November 5, 2010, (Dkt. No. 30) and Defendants replied on November 23, 2010. (Dkt. No. 35). Oral argument was held on January 5, 2010.

For the reasons stated below, the Court will:

1) DENY Defendants' Motion as to Plaintiffs' § 1983 constitutional deprivation claims arising out of the Fourth and Fourteenth Amendments against Defendant Officers;

2) GRANT Defendants' Motion as to Plaintiffs' § 1983 claims against Defendant City of Southfield;

3) GRANT Defendants' Motion as to Plaintiffs' Civil Conspiracy claim under state common law and § 1983;

4) GRANT Defendants' Motion as to all state law claims against Defendant Officers; and

5) DENY Defendants' Motion as to all state law claims against Defendant City of Southfield.

## II. BACKGROUND

For purposes of Defendants' Motion, all well-pleaded material allegations in Plaintiffs' pleadings are taken as true. *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

Plaintiffs allege that on June 11, 2008, the Defendant Officers, with Dykens and Cash-Calhoun, entered the Plaintiffs' home without their consent and without a warrant. Plaintiffs also allege that there were no exigent circumstances justifying Defendants' entry, and that Defendants "did not give a summons to Plaintiff Christos Kyrtsos . . . or to Plaintiff Margaret Kyrtsos . . . as required by Michigan law." (Am. Compl. ¶ 25). After entering Plaintiffs' home, Defendants seized Plaintiffs' minor children and removed them from the home. Plaintiffs allege that no preliminary hearing was held within 24 hours after this entry and seizure.

At approximately 4:30 p.m. on June 11, Defendant Cash-Calhoun contacted Oakland County Circuit Court Referee David G. Bilson to obtain an Order to Take Into Custody ("OTTIC"). It is unclear whether this contact was made before the Defendants had seized the minor children or afterward.

After removal of the minor children, they were allegedly held for approximately one month at a facility used to house juvenile delinquents, and were subsequently placed into foster care. According to the Amended Complaint, Defendant Officers failed to verify false information "which was critical to the state's seizure and continued seizure of the minor children." (Am. Compl. ¶ 28). Plaintiffs allege that the false information was provided by Defendants Dykens and Cash-Calhoun.

The Child Protective Services ("CPS") case is ongoing; however, Plaintiff Margaret Kyrtsos was dismissed from the case and the minor children were returned home. Plaintiff Christos Kyrtsos received an adverse decision in the CPS case and is appealing that decision. (Am. Compl. ¶ 35).

3

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted).  The motion is granted only if "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Id*.  Still, a plaintiff must plead specific facts and not mere "legal conclusions."  *In re DeLorean Motor Co.*, 991 F.2d at 1240.  "A plaintiff falls short if [it] pleads facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct . . . .'"  *Albrecht v. Treon*, 617 F.3d 890 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 1950 (2009)).

### IV.  ANALYSIS

#### A.  Section 1983 Claims Under the Fourth and Fourteenth Amendments

Plaintiffs have alleged the following:

> At all relevant times, Defendants Smiscik, Hart, Adams, Cash-Calhoun and Danielle [Dykens] were acting under color of state law and at no time did said Defendants have just cause or reason to believe that they could *enter the Plaintiffs' home without a warrant, seize the minor children without a court order*, and fail to investigate or verify the charges prior to such unlawful search and seizure, and to give false information as support for proceeding as such.

(Am. Compl. ¶ 42) (emphasis added).  Defendant Officers and the City of Southfield first argue that Plaintiffs cannot establish a violation of their Fourth Amendment rights.  Defendants attach the OTTIC from the Oakland County Circuit Court-Family Division, which states "[t]here are reasonable grounds" for removal of the children.  (Defs.' Mot. Ex. 2 - OTTIC).  Defendants

4

claim that their actions were reasonable because they seized the children in accordance with this order.

In their Response, Plaintiffs argue that the OTTIC was not issued until after the minor children were seized and removed from the home. Further, Plaintiffs argue that even if it had been received before the children were seized, it would not suffice because it was purely a verbal order at that time.

Plaintiffs have at least three distinct claims under § 1983, and the Court will address each separately. Specifically, Plaintiffs claim that Defendants violated the Constitution by carrying out the following three activities: (1) entry into their home without permission and without a warrant, (2) seizing the minor children without a warrant or written court order, and (3) denying their constitutional rights without due process. In analyzing these issues, the Court finds *O'Donnell v. Brown*, 335 F.Supp.2d 787 (W.D. Mich. 2004), to be particularly instructive. In that case, the plaintiffs sued police officers, social workers and the City of Lansing for various constitutional violations arising out of the seizure and removal of minor children from their home. The defendants claimed that their actions were justified because "a decision was made to [] remove the children from the home, and Referee Whitworth issued a verbal court order to that effect." *Id*. at 799. The pertinent claims in that case included "that Defendants violated their rights by entering their home without a warrant; [and the minor children] allege that Defendants violated their rights by seizing and removing them from their home[.]" *Id*. at 800. While the *O'Donnell* decision provides a thorough analysis of the issues at hand, the Court notes one important factual distinction between that case and the instant matter: In *O'Donnell* the referee's order was purely verbal, but in the instant case the referee's order was recorded and a full

5

transcript exists. (Pls.' Resp. Ex. 1 - OTTIC Hr'g Tr.).

**1. Entry into home**

"The 'chief evil' against which the Fourth Amendment protects is the 'physical entry of the home.'" *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003) (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)). "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 533 U.S. 27 (2001).

Defendants argue that their actions were justified because they were acting pursuant to the OTTIC issued by the Oakland County Circuit Court-Family Division. A similar argument was rejected in *O'Donnell*, in which the court stated:

> even if the referee's order authorized taking the children into custody, the Court must conduct a separate Fourth Amendment analysis to determine whether that order also constituted a valid search warrant authorizing entry into the home. The Court concludes that it did not because it was merely a verbal order when it should have been in writing.

335 F.Supp.2d at 802. Michigan does not allow search warrants to be issued by telephone. *See* M.C.L. § 780.651; *O'Donnell*, 335 F.Supp.2d at 802-03. Further, Defendants' brief does not address the possibility of exigent circumstances as justification for their warrantless entry. As noted above, the order in this case is different from the purely verbal order issued in the *O'Donnell* case. However, it is not clear at this point when the order was issued or, importantly, if it occurred before Defendants' entry into Plaintiffs' home. Therefore, viewing Plaintiffs' allegations as true, Defendants' entry into Plaintiffs' home was unlawful and in violation of Plaintiffs' Fourth Amendment rights. Subsequent discovery will undoubtedly flesh out the facts.

**2. Seizure of the minor children**

The removal of children from the home of their custodial parents is a seizure under the Fourth Amendment, and is constitutionally permissible if the seizure is pursuant to a court order or justified by exigent circumstances. *See O'Donnell*, 355 F.Supp.2d at 806-07; *See also Krantz v. City of Teledo Police Dept.*, 197 Fed. Appx. 446, 453 n. 5 (6th Cir. 2006). Defendants argue that their seizure of the minor children was pursuant to a court order, and was therefore not a Fourth Amendment violation. Again, the Court finds the following analysis from the *O'Donnell* case instructive on this issue:

> Defendants appear to argue that oral orders suffice to permit the removal of children from a family's home but have provided no authority for this position, and the Court rejects it. For Fourth Amendment purposes, a verbal order to seize a child from his home is defective for the same reason as is a verbal order to enter (i.e. search) a home; both must be written to be valid orders under the Fourth Amendment. Thus, the removal of the minor children was not duly authorized by a valid court order.

335 F.Supp.2d at 807. As noted above, Defendants do not argue that exigent circumstances applied in this case. Again, if the order in this case – which was not purely verbal – was issued prior to the seizure of the children, then the seizure may be valid. Because that is unclear at present, and because the Court must take Plaintiffs' allegations as true, this claim will not be dismissed. Again, the Court notes that subsequent discovery will flesh out the facts.

**3.  Due Process**

Defendants also argue that Plaintiffs' due process claim must be dismissed because, "[t]o the extent that Plaintiffs are alleging a violation of their due process rights based upon the alleged illegal entry into their home and the removal of the minor children, such a claim . . . can only be brought under the Fourth Amendment." The Court finds no merit in this argument, however, as Plaintiffs invoke both the Fourth and Fourteenth Amendments in their § 1983 claims

under Count I.

In summary, the Court finds that Plaintiffs have sufficiently alleged a violation of their Fourth and Fourteenth Amendments under § 1983, and Defendants Motion is denied insofar as it applies to these claims.

### B.  "Official Capacity" Claims

Plaintiffs seek damages against Defendant Officers "in their individual and official capacities." (Am. Compl.).  Defendants correctly point out that official capacity claims against government agents are treated as claims against the government entity itself.  *See Monell v. New York Dept. of Social Serivices*, 436 U.S. 658, 690 n. 55 (1978).  Defendant goes on to state that the official capacity claims should be dismissed because they are actually claims against the City of Southfield, and are therefore redundant.  However, this is not a valid ground for dismissal.

> Even though it is no longer necessary to bring an official-capacity action against a local government official since under *Monell* the local government unit can be sued directly, many complaints name the entity as a defendant and the official as a defendant in both an individual and official capacity. . . . [P]laintiff in the present case unambiguously captions the complaint against the officers in both capacities, even though the official capacity designation is redundant because plaintiff also names as defendants the government entities.  Accordingly, plaintiff's complaint will be viewed as a claim against the officers in both their individual and official capacities.

*Fluellen v. Dept. of Justice Drug Enforcement Admin.*, 816 F.Supp. 1206, 1212 (E.D. Mich. 1993).

### C.  Municipal Liability

Defendants argue that Plaintiffs have not established a claim against the City of Southfield because they "have failed to identify or cite to any policy or practice of the City upon

8

which its Officers acted to violate Plaintiffs' constitutional rights." (Defs.' Br. at 7). A municipality is only liable under § 1983 where a government policy or customary practice causes the injury. *Monell*, 436 U.S. at 694. To state a claim, a plaintiff "must identify the policy, connect the policy to the [City] itself and show that the particular injury was incurred because of the execution of that policy." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citation and punctuation omitted). A municipality can be liable for a policy of inadequate training, but "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality[.]" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Moldowan v. City of Warren*, 578 F.3d 351, 393-94 (6th Cir. 2009).

Plaintiffs' Amended Complaint alleges that the City is liable because it created "policies, practices, and customs, establishing a de facto policy of deliberate indifference and/or reckless disregard to individuals such as Plaintiffs." (Am. Compl. ¶ 47). Plaintiffs add that:

> [t]hese customs and/or policies include, but are not limited to:
>
> a) A failure to train police officers in the proper policies and procedures for investigations, entry into homes without a warrant, and seizure of minor children from their parents' care;
>
> . . . .

(Am. Compl. ¶ 47). However, Plaintiffs do not allege facts that indicate a specific policy utilized by the City of Southfield that caused their injury, or any facts that support the claim that the City of Southfield made a "deliberate or conscious choice" in failing to train the Defendant Officers. *Harris*, 489 U.S. at 388. Thus, even taking Plaintiffs factual allegations as true, the Amended Complaint only suggests "a mere possibility of misconduct" by the City. *Ashcroft*, 129 S.Ct. at 1950. Taking these allegations as true, Plaintiffs have not established that the City's failure to

9

properly train the Defendant Officers was a deliberate choice and reflected the City's policy. Accordingly, Plaintiffs' § 1983 claim against the City will be dismissed.

### D. Qualified Immunity

The Defendant Officers argue that they are entitled to qualified immunity because they reasonably relied upon the OTTIC order, and "had reasonably trustworthy information from the court order of facts and circumstances that were sufficient to allow a reasonable officer to believe removal of the children would be lawful." (Defs.' Br. at 9).

"Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappel v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). This defense "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. (citations and punctuation omitted). Qualified immunity requires a showing that (1) a constitutional right was violated, and (2) the constitutional right was clearly established at the time of the violation. *Id*. "[A] person has a clearly established right to be free from unreasonable searches, including a warrantless search in the absence of exigent circumstances or some other warrant exception." *McKenna v. Edgell*, 617 F.3d 432, 440 (6th Cir. 2010).

If Defendant Officers reasonably believed they were acting pursuant to a court order at the time of the search and seizure, they are entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 822 (2009) (holding that "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment."). However, based on the pleadings, it is not clear at what point the Defendant Officers were informed of the court order. More importantly, it is not clear

whether the Defendant Officers entered Plaintiffs' home and seized the minor children before obtaining the court order. According to the Amended Complaint, the Defendant Officers did seize the minor children without a court order. (Am. Compl. ¶ 42). Thus, taking Plaintiffs' allegations as true, at this point in time, Defendant Officers are not entitled to qualified immunity.

### E. Civil Conspiracy

Defendants argue that Plaintiffs' conspiracy claim under § 1983 should be dismissed because it has not been alleged with adequate specificity. "In this circuit, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Moldowan*, 578 F.3d at 395 (citation and punctuation omitted).

Plaintiffs allege that "Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of violating Plaintiffs' civil rights[.]" (Am. Compl. ¶ 54). In support of this conclusory allegation, Plaintiffs make no factual allegations that an agreement existed, or that Defendants were acting in furtherance of that agreement. This is insufficient under Sixth Circuit precedent. *See Moldowan*, 578 F.3d at 395 (dismissing civil conspiracy claim where complaint contained only conclusory allegations supported by one substantive factual allegation); *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987) (dismissing civil conspiracy claim where "Plaintiff's allegations lack the requisite material facts and specificity necessary to sustain a conspiracy claim."); *Hurt v. Birkett*, 566 F.Supp.2d 620, 632 (E.D. Mich. 2008) (dismissing conspiracy claim where "plaintiff identifie[d] the dates and purpose of the alleged conspiracy, [but offered] no other details or allegations

11

regarding any specific acts in furtherance of that conspiracy."). Therefore, Plaintiffs' civil conspiracy claim will be dismissed.

Likewise, Plaintiffs have not stated a claim for civil conspiracy under state law. A common law claim for civil conspiracy requires "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Gascho v. Scheurer Hosp.*, 589 F.Supp.2d 884, 892 (E.D. Mich. 2008) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich. App. 300, 313 (1992)). Plaintiffs do not address common law conspiracy in their Response.

Because Plaintiffs have not alleged facts indicating any sort of agreement between the Defendants, as stated above, Plaintiffs' common law conspiracy claim will be dismissed.

### F. State Law Claims

Defendants argue that Plaintiffs have failed to plead in avoidance of governmental immunity. However, Plaintiffs have alleged that "Defendants were grossly negligent as it is defined and in violation of [M.C.L. 691.1407(2)][2]." (Am. Compl. ¶ 51). Gross negligence is an exception to Michigan's governmental immunity law. *See Odom v. Wayne County*, 482 Mich. 459, 479-82, 760 N.W.2d 217, 228-29 (2008); *see also Wolgast v. Richards*, 389 Fed. Appx. 494, *9 (6th Cir. Aug. 9, 2010). Plaintiffs' Amended Complaint sufficiently alleges gross negligence on the part of Defendants to avoid Michigan's governmental immunity statute.

Plaintiffs concede that the state law claims against the Defendant Officers are time barred. Therefore, those claims will be dismissed and only the state law claims against

---

[2] Plaintiffs' Amended Complaint mistakenly identifies the relevant provision as M.C.L. 671.1407(2).

Defendant City of Southfield will remain.

## V.  CONCLUSION

For the reasons stated above, the Court will:

1) **DENY** Defendants' Motion to Dismiss as to Plaintiffs' § 1983 constitutional deprivation claims arising out of the Fourth and Fourteenth Amendments against Defendant Officers;

2) **GRANT** Defendants' Motion to Dismiss as to Plaintiffs' § 1983 claims against Defendant City of Southfield;

3) **GRANT** Defendants' Motion to Dismiss as to Plaintiffs' Civil Conspiracy claim under state common law and § 1983;

4) **GRANT** Defendants' Motion to Dismiss as to all state law claims against Defendant Officers; and

5) **DENY** Defendants' Motion to Dismiss as to all state law claims against Defendant City of Southfield.

**SO ORDERED.**

> s/Paul D. Borman
> PAUL D. BORMAN
> UNITED STATES DISTRICT JUDGE

Dated:  February 24, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 24, 2011.

> s/Denise Goodine
> Case Manager